IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 2:03cr232-MEF |
| | ) | (WO) |
| TIMOTHY JEVON SEWELL | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

On September 10, 2013, defendant Timothy Jevon Sewell ("Sewell") filed a *pro se* "Motion for the Return of Seized Property" (Doc. No. 109) seeking the return of property that agents with the United States Drug Enforcement Administration ("DEA") seized from his residence during execution of a search warrant and his arrest on drug-trafficking charges in October 2003.  In a document filed on November 14, 2013 (Doc. No. 119), Sewell clarified that he is proceeding under Fed.R.Crim.P. 41(g) and is seeking the return of two automobiles; approximately $6,500 in United States currency; items of jewelry worth approximately $12,500; a video observation system; and "an assortment of miscellaneous other items."  *See* Doc. No. 119 at 1-2.  He contends that "the Government hasn't shown per the law a legitimate reason why [his] property shouldn't be returned, thus making the continued confiscation of [his] property illegal, unethical, and unconstitutional."  *Id*. at 3.

The Government answers that some of the items sought by Sewell – specifically, jewelry and the video observation system – were not seized by DEA agents during his arrest, that a smaller amount of currency than alleged by Sewell was seized, and that the seized

automobiles and currency were administratively forfeited by the DEA. Doc. Nos. 116 & 122. The Government asserts that, where Sewell's motion for the return of property seeks relief under Fed.R.Crim.P 41(g), review of the DEA's administrative forfeiture decision is beyond this court's jurisdiction and that Sewell has demonstrated no other basis for relief. *Id*. For the reasons that now follow, the court finds Sewell is not entitled to any relief.

## II.  FACTS AND PROCEDURAL HISTORY

During September and October of 2003, agents with the DEA received information implicating Sewell in distributing large amounts of methamphetamine in the Montgomery, Alabama, area. Doc. No. 95 at 5-6. On October 21, 2003, DEA agents, assisted by city police officers, executed a warrant to search Sewell's Montgomery residence. Doc. No. 122-1 (Gov. Ex. A) at 1. Agents seized 21 grams of ice methamphetamine during the search. Doc. No. 95 at 6-8. According to the inventory list in the DEA's case file, agents also seized two automobiles (Sewell's 1998 Cadillac DeVille and 1994 BMW 318i), several firearms, $3,340 in United States currency, digital scales, and miscellaneous documents, photographs, and computer discs. Doc. No. 122-1 (Gov. Ex. A) at 1-2.

On October 29, 2003, a federal grand jury in the Middle District of Alabama indicted Sewell on charges of conspiracy to possess with intent to distribute methamphetamine, possession with intent to distribute methamphetamine, possession of firearms in furtherance of drug-trafficking crimes, and possession of a firearms by a convicted felon. Doc. No. 14.

In November and December of 2003, by certified mail, the DEA sent notices of

seizure regarding the two automobiles and the currency seized from Sewell's residence to Sewell, in the Montgomery City Jail, and to his attorney, Terry W. Travis, at his Montgomery law office. *See* Doc. No. 126-1 (Ex. A); Doc. No. 126-2 (Ex. B); Doc. No. 126-3 (Ex. C). Although unsuccessful, notice was also sent to Sewell's Montgomery home address. *See* Doc. No. 122 at 2. All notices contained instructions on contesting a forfeiture action and stated the last date to file a claim regarding the seized currency was December 29, 2003, and the last date to file a claim regarding the two automobiles was January 16, 2004. *See* Doc. No. 126-1 (Ex. A); Doc. No. 126-2 (Ex. B); Doc. No. 126-3 (Ex. C). Receiving no claims from Sewell, the DEA administratively forfeited the automobiles and currency in February and March of 2004. Doc. No. 122-1 (Ex. A) at 1-2.

On June 10, 2004, a jury found Sewell guilty of conspiracy to possess with intent to distribute methamphetamine, possession with intent to distribute methamphetamine, and possession of a firearm by a convicted felon.[1] Doc. No. 67. On October 21, 2005, he was sentenced to 250 months in prison. Doc. No. 90.

Sewell filed his motion for the return of property on September 10, 2013. Doc. No. 109.

### III. DISCUSSION

---

[1] Sewell was acquitted on the count of possession of firearms in furtherance of drug-trafficking crimes. `As a result of his conviction on the possession-by-convicted-felon count, the firearms seized from his residence were also forfeited to the United States, to be disposed of according to law. *See* Doc. Nos. 68, 70, 79 & 80. He does not challenge the forfeiture of the firearms. *See* Doc. No. 119 at 1-2.

Proceeding under Fed.R.Crim.P. 41(g),[2] Sewell seeks the return of the two automobiles and currency seized during his 2003 arrest, and a video observation system, items of jewelry, and miscellaneous other items he says were also seized. Doc. No. 109; Doc. No. 119 at 1-3.

As noted above, the automobiles and currency[3] seized during Sewell's arrest were administratively forfeited by the DEA. Rule 41(g) provides that a person aggrieved by an unlawful search and seizure may move for return of the property on the ground that such person is entitled to lawful possession of the property. Fed.R.Crim.P. 41(g). However, a defendant cannot use the criminal procedure device of Rule 41(g) to seek relief from a civil forfeiture proceeding. *United States v. Artis*, 172 Fed.App'x 309, 311 (11th Cir. 2006). *See also, e.g.*, *United States v. Quezada*, 439 Fed.App'x 824, 827 (11th Cir. 2011), citing *United States v. Eubanks*, 169 F.3d 672, 674 (11th Cir. 1999) (discussing former Rule 41(e), which now is in Rule 41(g), and holding a "[Rule 41(g)] motion is unavailable ... when property is

---

[2] Rule 41(g) provides:

Motion to Return Property. A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Fed.R.Crim.P. 41(g).

[3] Although Sewell asserts that approximately $6,500 in currency was seized during his 2003 arrest, the inventory list in the DEA's case file reflects that DEA agents seized (and later forfeited) $3,340 in currency. Doc. No. 122-1 (Gov. Ex. A) at 1-2. Sewell presents no proof that the greater amount of currency was seized.

retained pursuant to civil forfeiture instead of for use as evidence"); Fed.R.Crim.P. 1(a)(5)(B) (stating that the Federal Rules of Criminal Procedure do not apply to a civil property forfeiture for violation of a federal statute). Because the automobiles and currency seized during Sewell's arrest were administratively forfeited, his claims seeking the return of this property are not properly raised under Rule 41(g).

In an affidavit addressing Sewell's motion for the return of property, DEA Special Agent Thomas Neill Thompson avers that the DEA's case file and Report of Investigation regarding Sewell's 2003 arrest do not mention the seizure of any items of jewelry or a video observation system from Sewell's residence. Doc. No. 122-1 (Gov. Ex. A) at 1. With his affidavit, Thompson submits the inventory list in the DEA's case file, which, consistent with Thompson's representations, contains no mention of the seizure of jewelry or a video observation system from Sewell's residence. *Id*. at 2. Sewell fails to prove that jewelry or a video observation system were seized during his arrest.[4] Therefore, he cannot demonstrate his entitlement for return of this property.

Sewell may seek to set aside the administrative forfeiture of the seized automobiles and currency only in a civil action under the Civil Asset Forfeiture Reform Act ("CAFRA"), 18 U.S.C. § 983. *See* 18 U.S.C. § 983(e)(5) ("A motion filed under this subsection shall be the exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute."); *Valderrama v. United States*, 417 F.3d 1189, 1195 (11th Cir. 2005)

---

[4] Sewell does not specify any of the "miscellaneous other items" purportedly seized during his arrest. Consequently, the disposition of any such items is not a matter properly before this court.

(same). Further, this court "lacks jurisdiction to review the merits of administrative or nonjudicial forfeiture decisions." 417 F.3d at 1194. Thus, to the extent that Sewell challenges the forfeiture on the merits, rather than on procedural grounds, the court may not consider that challenge. *Id.* at 1196. However, the court has jurisdiction over claims seeking review of the adjudicatory process itself. *Id.* at 1194. Furthermore, federal courts can, in "exceptional cases," invoke equitable jurisdiction over administrative forfeitures. *Id.* at 1197 (quotation omitted).

Section 983(e) provides:

(1) Any person entitled to written notice in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute who does not receive such notice may file a motion to set aside a declaration of forfeiture with respect to that person's interest in the property, which motion shall be granted if–

(A) the Government knew, or reasonably should have known, of the moving party's interest and failed to take reasonable steps to provide such party with notice; and

(B) the moving party did not know or have reason to know of the seizure within sufficient time to file a timely claim.

(2)(A) Notwithstanding the expiration of any applicable statute of limitations, if the court grants a motion under paragraph (1), the court shall set aside the declaration of forfeiture as to the interest of the moving party without prejudice to the right of the Government to commence a subsequent forfeiture proceeding as to the interest of the moving party.

(B) Any proceeding described in subparagraph (A) shall be commenced–

(i) if nonjudicial, within 60 days of the entry of the order granting the motion; or

>> (ii) if judicial, within 6 months of the entry of the order granting the motion.
>
> (3) A motion under paragraph (1) may be filed not later than 5 years after the date of final publication of notice of seizure of the property.
>
> (4) If, at the time a motion made under paragraph (1) is granted, the forfeited property has been disposed of by the Government in accordance with law, the Government may institute proceedings against a substitute sum of money equal to the value of the moving party's interest in the property at the time the property was disposed of.
>
> (5) A motion filed under this subsection shall be the exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute.

18 U.S.C. § 983(e)(1)- (5).

In an administrative forfeiture proceeding, individuals whose property interests are at stake are entitled to notice reasonably calculated to inform them of the proceeding and to afford them an opportunity to be heard. *Valderrama*, 417 F.3d at 1196-97. A party claiming an interest in seized property that has been forfeited who did not receive notice "must show not only that the government knew or reasonably should have known of his interest in the property yet failed to take reasonable steps to notify him, but also that he did not know or have reason to know of the seizure within sufficient time to file a timely claim." *United States v. Russell*, 2006 WL 2786883, at *3 (M.D. Ala. Sep. 27, 2006).

Here, the steps the DEA took to notify Sewell of the forfeiture proceedings were reasonable and constitutionally adequate; the DEA gave Sewell "notice reasonably calculated, under all the circumstances, to apprise [him] of the pendency of the action and

afford [him] an opportunity to present [his] objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Dusenbery v. United States*, 534 U.S. 161, 167-71 (2002); *Valderrama*, 417 F.3d at 1196-97.  The Government has presented evidence that, in November and December of 2003, the DEA sent by certified mail to Sewell at the Montgomery City Jail, where he was being held, notices of the seizure of the two automobiles and the $3,340 in currency.  *See* Doc. No. 126-1 (Ex. A); Doc. No. 126-2 (Ex. B); Doc. No. 126-3 (Ex. C).  Notice was also sent to Sewell's attorney at his law office.  *Id*.  Although Sewell asserts that he did not receive the notices sent to the Montgomery City Jail, certified mail to a prisoner is presumptively sufficient, and Sewell gives no compelling reason for rejecting that presumption in his case.  *See e.g.*, *Whiting v. United States*, 231 F.3d 70, 76-77 (1st Cir. 2000).[5]

> The fact that plaintiff did not receive actual notice prior to forfeiture does not mean that the DEA's notice was constitutionally inadequate. Jones v. Flowers, 547 U.S. 220, 226, 126 S.Ct. 1708, 1713, 164 L.Ed.2d 415 (2006) ("Due Process does not require that a property owner receive actual notice before the Government may take his property."); *Dusenbery*, 534 U.S. at 169-170, 122 S.Ct. 700–701)).  ("[N]one of our cases cited by either party has required actual notice in [civil forfeiture proceedings] such as this.  Instead, we have allowed the Government to defend the 'reasonableness and hence the constitutional validity of any chosen method ... on the ground that it is in itself reasonably certain to inform those affected.'" (citing *Mullane*, 339 U.S. at 315, 70 S.Ct. 652, 94 L.Ed. 865)); *Valderrama*, 417 F.3d at 1197 (reasonable notice requires only that the Government attempt to provide actual notice; it does not require that the Government demonstrate that the notice was received).

---

[5] *See also United States v. Real Property, Tree Top,* 129 F.3d 1266 (Table), 1997 WL 702771, at *2 (6th Cir. Oct. 31, 1997); *Krecioch v. United States*, 221 F.3d 976, 981 (7th Cir. 2000); *United States v. Real Property, Lido Motel*, 135 F.3d 1312, 1315-16 (9th Cir. 1998); *United States v. Clark*, 84 F.3d 378, 381 (10th Cir. 1996).

> Generally, notice is sufficient if mailed to an address reasonably believed to be that of the intended recipient. *See Dusenbery*, 534 U.S. at 172, 122 S.Ct. 694, 151 L.Ed.2d 597 ("[T]he use of the mail addressed to petitioner at the penitentiary was clearly acceptable for much the same reason that [the Court] ha[s] approved mailed notice in the past."); *Tulsa Prof'l Collections Servs., Inc. v. Pope*, 484 U.S. 478, 490, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988) ("We have repeatedly recognized that mail service is an inexpensive and efficient mechanism that is reasonably calculated to provide actual notice."); *Lobzun v. United States*, 422 F.3d 503, 309 (7th Cir. 2005) (notice sent to address claimant provided to DEA at the time of seizure was adequate).

*Meadows v. United States*, 2013 WL 3836260, at *7 (N.D. Fla. Jul. 24, 2013).

Further, even taking Sewell's claim as true that he received no written notice of the seizure of the automobiles and currency, 18 U.S.C. § 983(e)(3) provides a limitation period of five years to challenge administrative forfeitures. *See De La Puente v. DEA*, 2006 WL 2644926, at *4 (N.D. Fla. Sep. 13, 2006). Sewell did not move for the return of the forfeited property until almost 10 years after its seizure. His attempt to set aside the forfeitures is untimely under § 981(e)(3).

Nor does equity warrant review of the DEA's forfeiture decisions at this late date. A federal court may exercise equitable jurisdiction if "the petitioner's conduct and the merits of his petition require judicial review to prevent manifest injustice." *Eubanks*, 169 F.3d at 674. "Such jurisdiction, therefore, is only appropriate in exceptional cases where equity demands intervention." *In re $67,470.00*, 901 F.2d 1540, 1544 (11th Cir. 1990). In addition, under CAFRA, the claimant must prove that he is an "innocent owner," so he is an "owner who did not know of the conduct giving rise to the forfeiture." 18 U.S.C. § 983(d)(2)(A)(I). Here, Sewell provides no reason for his nearly 10-year delay in seeking the return of

property. The pre-sentence investigation report ("PSI") in his criminal case, which was prepared in September 2004 and revised in October 2005, refers to the DEA's seizure of the two automobiles and currency during his arrest. Doc. No. 95 at 17. Even taking as true his claim that he did not receive the DEA's written notice in November and December of 2003, Sewell was given notice of the seizure in his PSI not less than 8 years before he filed his motion for the return of the property. His lengthy, un-excused delay in asserting his claim, and the prejudice such delay caused the Government in its ability to support its contention that the DEA's administrative forfeitures were proper, militate against equitable relief. *See De La Puente, supra,* at *5. Further, Sewell, who was convicted of trafficking in methamphetamine, was not unaware of the conduct that gave rise to the forfeiture of the automobiles and currency, which were alleged to be proceeds, or obtained through the proceeds, of his drug-trafficking activities. Neither Sewell's conduct nor the merits of his petition require judicial review to prevent manifest injustice. *Eubanks*, 169 F.3d at 674.[6]

## IV.  CONCLUSION

It is the RECOMMENDATION of the Magistrate Judge that Sewell's Motion for the Return of Seized Property (Doc. No. 109) be DENIED for the reasons set forth above.

It is further

ORDERED that the parties are DIRECTED to file any objections by July 28, 2014.

---

[6] As for Sewell's claim for interest and costs, sovereign immunity protects the Government from such claims for monetary relief. *See United States v. Potes Ramirez*, 260 F.3d 1310, 1315-16 (11th Cir. 2001); *United States v. Quezada*, 439 Fed.App'x 824, 828 (11th Cir. 2011).

Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised this Recommendation is not a final order; therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, en banc), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 14th day of July, 2014.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE